O
JS-6

# United States District Court
# Central District of California

MARY LOU VEGA; TARA INDEN; REGINA SAFFOLD-SANDERS, individually and on behalf of other members of the public similarly situated,

Plaintiffs,

v.

OCWEN FINANCIAL CORPORATION; OCWEN LOAN SERVICING, LLC,

Defendants.

Case No: 2:14-cv-04408-ODW(PLAx)

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT [64]**

## I. INTRODUCTION

On March 24, 2015, the Court issued the Order Granting Defendants' Motion to Dismiss the Complaint. *Vega v. Ocwen Fin. Corp.*, No. 2:14-cv-04408, 2015 WL 1383241 (C.D. Cal. Mar. 24, 2015) ("*Vega I*"). In dismissing the Complaint, the Court granted Plaintiff Mary Lou Vega leave to amend, and on April 3, 2015, Vega filed her First Amended Complaint. (ECF No. 63 ["FAC"].) The FAC introduces two new plaintiffs—Tara Inden and Regina Saffold-Sanders—while maintaining the six causes of action from the original Complaint. (*See id.*) Fourteen days later, Defendants Ocwen Financial Corporation and Ocwen Loan Servicing, LLC,

(collectively "Ocwen") filed a Motion to Dismiss First Amended Complaint. (ECF No. 64.) For the reasons discussed below, the Court **GRANTS** Ocwen's Motion and **DISMISSES** this case **WITH PREJUDICE**.[1]

## II. FACTUAL BACKGROUND

Ocwen operates a residential mortgage servicing business. (FAC ¶ 1.) Plaintiffs allege that when borrowers get behind on their mortgage payments and go into "default," Ocwen uses an automated system to "assess fees and costs on borrowers' accounts for property inspections, which are . . . purportedly designed to protect the lender's interest in the property." (*Id.* ¶ 2.)

Plaintiffs signed nearly identical mortgage agreements and the FAC details the relevant terms. Paragraph 9 of the mortgage agreements discloses that in the event of default, the lender may

> pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property . . . . Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.

(*Id.* ¶ 59.) Paragraph 14 of the mortgage agreements provides that "the lender may charge borrowers fees for services performed in connection with a borrower's default for the purpose of protecting the lender's interest in the property and rights under the Fannie Mae Servicing Instrument, including property inspections." (*Id.* ¶ 60.) According to Plaintiffs, the "Fannie Mae uniform mortgage contracts executed by the borrowers and investor guidelines, with which Ocwen is contractually obligated to comply, supply the legal right for Ocwen to charge borrowers for these property

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

2

inspections." (*Id.* ¶ 57.) Ocwen serviced Vega's mortgage from November 2012 through October 2013, Inden's mortgage from October 2013 through November 2014, and Saffold-Sanders' mortgage from January 2014 through December 2014. (*Id.* ¶¶ 76, 83, 88.) Ocwen allegedly charged Plaintiffs monthly property-inspection fees during these periods. (*Id.*)

According to Plaintiffs, Ocwen "is not permitted, by either the investors who hold the notes or the Fannie Mae uniform mortgage contracts, to indiscriminately charge borrowers fees and costs for property inspections which, are neither reasonable nor appropriate." (*Id.* ¶ 2.) Plaintiffs cite the "Fannie Mae Single Family 2011 Servicing Guide" which allegedly states that property inspection fees

> may be charged on a repetitive basis only when required or permitted by Fannie Mae's Guides or otherwise clearly supported by the circumstances relating to a particular loan (e.g., charging a delinquent borrower's account for monthly property inspections generally would not be a permissible practice unless the servicer determines that the circumstances warrant multiple inspections).

(*Id.* ¶ 3.) Plaintiffs allege that Ocwen's policy of automatically ordering monthly property inspections runs afoul of the Fannie Mae Servicing Guide because "[n]o individual assessment is made with respect to whether a property inspection is reasonable or appropriate on a particular property." (*Id.* ¶ 55.)

According to Plaintiffs, "Ocwen automatically and indiscriminately charges borrowers fees for property inspections at monthly intervals irrespective of whether there has been recent contact with the borrower, a partial payment was received, or even whether the initial inspection conducted reflects that the property collateral is occupied by the borrower and in good condition." (*Id.*)

Vega brings six causes of action in her putative class-action Complaint: (1) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code

§§ 17200, *et seq.*; (2) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); (3) RICO conspiracy, 18 U.S.C. § 1962(d); (4) violations of the Rosenthal Fair Debt Collections Practices Act (the "Rosenthal Act"), Cal. Civ. Code §§ 1788, *et seq.*; (5) unjust enrichment; and (6) fraud. (*Id.* ¶¶ 107–80.) Pending before the Court is Ocwen's Motion to Dismiss First Amended Complaint. (ECF No. 64.) Plaintiffs filed a timely Opposition (ECF No. 66 ["Opp. Br."]) and Ocwen a timely Reply (ECF No. 67).

### III. LEGAL STANDARD

Pursuant to Rule 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleading in the light most favorable to the non moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court is not required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (internal quotation marks and citations omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (internal quotation marks and citations omitted). "If a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint. These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim." *Durning v.*

4

*First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987) (internal citations omitted). The Court may consider contracts incorporated in a complaint without converting a motion to dismiss into a summary judgment hearing. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).

## IV. DISCUSSION

Plaintiffs failed to state a claim upon which relief can be granted because their theory of wrongdoing is an improper and unsupported legal conclusion. All of the alleged wrongdoing in this case flows from conduct not prohibited under the law, and therefore the Court must dismiss the FAC. The Court will first discuss its prior ruling in *Vega I* and then discuss the fatal deficiencies in the FAC.

### A. *Vega I*

In *Vega I*, the Court dismissed the original Complaint on numerous grounds, to include Vega's flawed theories of liability. Vega claimed that post-default property-inspection fees were unlawful based on two theories of wrongdoing: the "manner" in which Ocwen ordered the inspections and Ocwen's "failure to disclose." *Vega I*, 2015 WL 1383241, at *4–*7. The fundamental tension in the original Complaint was between the plain language in the mortgage agreement and Vega's two theories of wrongdoing. The mortgage agreement clearly stated that "Ocwen can order reasonable property inspections when Vega goes into default." *Id.* at *5. The Court explained that the alleged wrongdoing based on the imposition of property inspection fees, which were explicitly authorized by the terms of the mortgage agreement, constituted "a breach of contract claim and nothing more." *Id.* The Court concluded, *inter alia*, that Vega's theories of wrongdoing were "legally deficient because she trie[d] to spin a breach of contract claim into a fraud case." *Id.* at *4. The Court dismissed the Complaint with leave to amend.

### B. The FAC's Reliance on the Fannie Mae Servicing Guide

The FAC presents a new theory of wrongdoing, yet the flaws from the original Complaint are still present. Plaintiffs, as they must, concede that the mortgage

5

agreements "with which Ocwen is contractually obligated to comply, supply the *legal right* for Ocwen to charge borrowers for these property inspections." (FAC ¶ 57 [added emphasis].) In an effort to work around this unavoidable reality, the FAC now alleges that their theory of wrongdoing is based on "false pretense." Plaintiffs' explain this theory as follows:

> The FAC alleges that Ocwen defrauded unsuspecting borrowers by demanding payments for property inspection fees—which, using Ocwen's automated system, were indiscriminately assessed, without the requisite consideration for whether they were reasonable [or] appropriate—under the false pretense that Ocwen was authorized to collect such fees, when, in fact, it knew it was not authorized to collect such fees.

(Opp. Br. at 1.)

According to Plaintiffs, the reason *why* Ocwen was "not authorized to collect" property-inspection fees is that the Court "can" use the Fannie Mae Servicing Guide to determine that Ocwen is acting unlawfully. (Opp. Br. at 3.) The Fannie Mae Servicing Guide allegedly "set[s] the standard of conduct to which Ocwen is required to comply" and suggests that Ocwen should make an individualized assessment before ordering multiple property inspections, yet Ocwen is allegedly "ignoring" those suggestions. (*Id.* [quoting FAC ¶ 4].) Therefore, "Ocwen exceed[ed] its authority when it charged borrowers fees for property inspections through its automated system." (*Id.*) In other words, the alleged contravention of the Fannie Mae Servicing Guide serves as the *sole* allegation justifying Plaintiffs' claims that Ocwen acted with false pretenses. Without the Fannie Mae Servicing Guide, Plaintiffs would have no basis to claim Ocwen acted unlawfully—the plain language of the mortgage agreements certainly does not support Plaintiffs' position. This raises the question:
/ / /

what role, if any, can the Fannie Mae Servicing Guide play in stating a claim upon which relief can be granted?

The Court first notes that there is no authority anywhere to support Plaintiffs' position. Plaintiffs fail to identify any authority that holds a violation of Fannie Mae Servicing Guide, by itself, is sufficient to state a claim upon which relief can be granted. Instead, Plaintiffs argue that "there is ample 'support' for the 'proposition' that the Fannie Mae servicing guidelines can be used to determine whether the property inspection fees at issue in this case are unauthorized." (Opp. Br. at 3.) Plaintiffs' purported "support" is not case law but filings from other parties in other cases. (*See id.*) According to Plaintiffs, because other lawyers cited the Fannie Mae Servicing Guide in unrelated case filings, Plaintiffs can rely on the Servicing Guide to state a cause of action here.

The Court rejects this argument. The law is clear—an alleged violation or breach of the Fannie Mae Servicing Guide does not give rise to any cause of action. The District Court in *McKenzie v. Wells Fargo Bank, N.A.*, 931 F. Supp. 2d 1029 (N.D. Cal. 2013), addressed this exact issue. In *McKenzie*, the court grappled with the plaintiffs' breach of contract claim based on a loan servicer's alleged violations of the Fannie Mae Servicing Guide. The "[p]laintiffs argue[d] that the [Freddie Mac and Fannie Mae] servicing guidelines demonstrate that [the loan servicer] was not delegated the authority to perform the specific transactions at issue in this case." *Id.* at 1043. The *McKenzie* court explained that the "only coherent construction of that argument is that [the loan servicer] exceeded its authority as set forth in the [Freddie Mac and Fannie Mae] servicing guidelines." *Id.* at 1044. The court rejected this argument on two grounds. First, the servicing guidelines only specified "minimum requirements that the Loan Servicer 'must' ensure are satisfied" and do limit the servicer's discretion. *Id.* Second, "federal courts have uniformly concluded, to the extent that the [Freddie Mac and Fannie Mae] servicing guidelines can be read as creating enforceable contractual duties, that borrowers are neither parties nor third-

7

party beneficiaries entitled to enforce the . . . servicing guidelines." *Id.* The *McKenzie* court concluded that "as a matter of law, [the loan servicer] did not breach the mortgage contracts on that theory." *Id.* at 1043.

The Court in *McKenzie* is not alone in reaching this conclusion. Other courts around the country have rejected the notion that a violation of the Fannie Mae Servicing Guide gives rise to a cause of action. *See, e.g.*, *Hinton v. Fed. Nat. Mortgage Ass'n*, 945 F. Supp. 1052, 1056–57 (S.D. Tex. 1996); *Pennell v. Wells Fargo Bank, N.A.*, No. 10-cv-00582, 2012 WL 2873882, *8 (S.D. Miss. July 12, 2012); *Kariguddaiah v. Wells Fargo Bank, N.A.*, No. 09-cv-5716, 2010 WL 2650492, at *4 n.4 (N.D. Cal. July 1, 2010); *Wells Fargo Bank, N.A. v. Sinnott*, No. 07-cv-169, 2009 WL 31577380, at *11–*12 (D. Vt. Sept. 25, 2009).

Plaintiffs' reliance on the Fannie Mae Servicing Guide is simply untenable. Yes, the Fannie Mae Servicing Guide directly mentions property inspections and frowns upon reoccurring property inspections. However, the Fannie Mae Servicing Guide, to which Plaintiffs were not a party, is not enforceable against Ocwen and cannot create the alleged "false pretenses" which serve as the underlying conduct for each cause of action. Without the Fannie Mae Servicing Guide, the mortgage agreements are the only operative documents and Plaintiffs concede that the mortgage agreements provide Ocwen the "legal right" to charge and collect property-inspection fees. Ocwen cannot act with false pretenses if Plaintiffs cannot enforce the terms of the Fannie Mae Servicing Guide. There is simply no misrepresentation for past or existing fact, and therefore Ocwen did not act with false pretenses. The FAC is dependent on Plaintiffs' claim that Ocwen acted with false pretenses, yet the allegations in the FAC, taken as true, fail to establish *any* conduct taken with false pretenses. Therefore, each cause of action fails to state a claim for relief.

Plaintiffs attempt to avoid the detrimental authority by suggesting that they merely wish to use the Fannie Mae Servicing Guide as an instructive tool. Plaintiffs claim that they are not "seeking to enforce the Fannie Mae [S]ervicing [G]uidelines"

8

and "are not contending that the servicing guidelines are somehow incorporated by reference" into the mortgage agreements. (Opp. Br. at 3.) Instead, Plaintiffs assert that the Fannie Mae Servicing Guide "*can* be used to determine whether the property inspection fees at issue in this case are unauthorized." (Opp. Br. at 3 [added emphasis].)

The Court first notes that while Plaintiffs claim they are "not seeking to enforce" the Fannie Mae Serving Guide, they are in fact seeking to enforce the Servicing Guide. Plaintiffs are playing semantic gymnastics to get around persuasive case law directly on point. Plaintiffs' entire theory of wrongdoing is dependent on one paragraph from the Fannie Mae Servicing Guide, and without that paragraph they have no case. The sole falsity which serves as the basis of Plaintiffs' false pretense theory of wrongdoing is a *violation* or *breach* of the Fannie Mae Servicing Guide. Plaintiffs' assertion that they are "not seeking to enforce" the Servicing Guide is incorrect.

The Court also notes that Plaintiffs do not argue that the Fannie Mae Servicing Guide must or shall be used—nor could they. Instead, Plaintiffs merely claim that the Court "*can*" use the Servicing Guide. This argument is clear evidence that this case is still nothing more than a basic contract dispute. According to Plaintiffs, "the Fannie Mae [S]ervicing [G]uidelines are 'particularly instructive' of the intended interpretation of the requirement in the Fannie Mae mortgage contract that property inspection fees be 'reasonable or appropriate.'" (Opp. Br. at 5.) Plaintiffs admit that this case is about "interpret[ing]" the mortgage agreements and claim that the Fannie Mae Servicing Guide "can" be used to decipher the proper interpretation. Plaintiffs want the Court to use the Fannie Mae Servicing Guide as parole evidence despite the fact that they have not brought a breach of contract claim and have no authority to support a similar use of the Servicing Guide. Plaintiffs' argument that "[p]roperly construed, [the] false pretenses theory of wrongdoing goes well beyond a mere breach
///

of contract" (*id.* at 2), is the only falsity in this case. Once again, the Court will not allow Plaintiffs to spin a breach of contract action into a fraud case.

## V. CONCLUSION

The alleged wrongdoing which serves as the basis for each cause of action is not wrongful conduct. The FAC is entirely dependent on the Fannie Mae Servicing Guide, and Plaintiffs do not have the legal authority to enforce a violation of that third-party agreement. Without the ability to rely on the Fannie Mae Servicing Guide, Plaintiffs have no basis to claim Ocwen acted under false pretenses. The Court will not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer*, 649 F.3d at 1064. Therefore, the Court concludes that Plaintiffs failed to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). The Court hereby **GRANTS** Defendants' Motion to Dismiss. (ECF No. 64.) Plaintiffs provided no indication that amending the FAC is possible, and therefore the Court concludes that granting leave to amend would be futile. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990). This action is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

May 28, 2015

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**